UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ZAMPERLA, INC.,

    Plaintiff,

v.                                                    Case No.  6:11-cv-1838-Orl-37TBS

S.B.F.,

    Defendant.

## REPORT AND RECOMMENDATION[1]

Pending before the Court is Zamperla, Inc.'s Motion for Final Default Judgment and Injunction against Defendant, S.B.F. and Memorandum of Law in Support. (Doc. 25). Plaintiff seeks the entry of a default judgment permanently enjoining Defendant and others associated with Defendant from marketing, promoting, selling, or delivering any reproduction, counterfeit, copy, colorable imitation, confusingly similar, or substantially similar version of Plaintiff's hot air balloon themed Ferris wheel ride, Plaintiff's "Jump Around" ride, or other substantially similar amusement ride which has a race car theme, in the United States.

### I.  Background

Plaintiff is a New Jersey corporation which designs, markets and distributes amusement rides including hot air balloon theme Ferris wheel rides and children's amusement rides.[2]  (¶ 1)  Defendant is a foreign corporation organized under the laws of

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and M.D. FLA. R. 6.02, within fourteen (14) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

[2] Unless another source is indicated, all facts come from Plaintiff's Complaint (Doc. 1).

Italy.  (¶ 2).

In 1993, Plaintiff sued Defendant in this Court, Case No. 8:93-cv-641-HLA, alleging that Defendant was selling hot air balloon themed Ferris wheel rides in the United States, that were confusingly similar to Plaintiff's rides.  (¶¶ 3-8).  The parties entered into a Stipulation of Settlement ("Stipulation) to settle the 1993 case.  (¶ 8).   In the Stipulation, Defendant promised "not to market, promote, sell or deliver any hot air balloon theme Ferris wheel rides manufactured by [Defendant] . . . in the United States . . . including distribution at trade shows in the United States."  (Doc. 1-1 ¶ 6a).

The Stipulation provided for retention by this Court of jurisdiction over the parties for purposes of enforcing the Stipulation.  (Doc. 1-1 ¶ 8).  It also provided for recovery of the prevailing party's attorneys' fees and costs in the event of litigation to enforce the Stipulation.   (Doc. 1-1 ¶ 9).

In Count I of the operative Complaint in this current action, Plaintiff alleges that Defendant breached the Stipulation during the period November 15-19, 2011, by promoting a hot air balloon themed Ferris wheel ride at the International Association of Amusement Parks and Attractions Convention ("Convention") in Orlando, Florida.  (¶¶ 9-13, 27-35).  Exhibit "B" to the Complaint is a copy of marketing material Defendant used at the Convention.  (Doc. 1-1 at 6).  It depicts a Ferris wheel with what appear to be seats shaped to look like hot air balloons.  Plaintiff considers this a breach of the Stipulation and has prayed for damages, attorneys' fees, costs and injunctive relief.  (¶ 26).

In Count II, Plaintiff alleges sole ownership of a children's ride called the "Jump Around" which has a race car theme and checkered flag in the center.  (¶¶ 14, 36-46).

Plaintiff complains that at the Convention, Defendant promoted a confusingly similar imitation of the Jump Around which Defendant calls "Pop-Ups." (¶ 15). According to Plaintiff, Defendant's Pop-Ups ride includes the same features, race theme and checkered flag as Plaintiff's Jump Around. (Id.) Plaintiff alleges that Defendant does not have authorization or authority to imitate the Jump Around. (¶ 16). Exhibits "C" and "D" to the Complaint are copies of marketing materials utilized by Plaintiff and Defendant which depict the similarities in their products. (Doc. 1-1 at 7-8). Based upon these allegations, Plaintiff contends that Defendant has deliberately engaged in unfair competition affecting interstate commerce in violation of the Lanham Act, 15 U.S.C. § 1125(a). (¶¶ 27-35). Plaintiff asks for statutory damages, treble damages, preliminary and permanent injunctive relief, costs, interest and attorneys' fees. (¶ 35).

Count III is a Florida common law claim of unfair competition. Plaintiff avers that it spent time, effort and money to design, develop, manufacture and distribute the Jump Around. (¶ 39). Plaintiff also says it has spent time and money developing a valuable reputation and goodwill in the amusement ride industry. (¶ 40). The Defendant has allegedly used Plaintiff's proprietary designs, marks, advertising and intellectual property to falsely designate the origin of Defendant's inferior, counterfeit products. (¶¶ 40-44). Alternatively, Plaintiff claims Defendant has actually copied Plaintiff's products and is passing them off as Defendant's own products. (¶ 44). Plaintiff seeks compensatory damages, an accounting, preliminary and permanent injunctive relief, and costs. (¶ 46).

Count IV is a Florida common law action for trademark infringement. Plaintiff alleges that it is an industry leader in the design and development of amusement park

rides which it says are proprietary and protected from unauthorized use. (¶ 49). Plaintiff complains that Defendant is currently marketing and selling amusement rides that are confusingly similar, if not identical, to Plaintiff's products. (¶ 50). And that Defendant is doing so in a manner likely to cause confusion or mistake, and which will deceive others as to the origin and source of Defendant's goods. (Id.) Plaintiff says Defendant does not have its permission, and has infringed upon Plaintiff's proprietary designs and products. (¶¶ 52-53). Plaintiff prays for injunctive relief, money damages, interest and costs. (¶ 55).

Count V is a claim for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), FLA. STAT. § 501.201 et seq. Plaintiff contends that Defendant's actions constitute unfair methods of competition and are unfair and deceptive practices in the conduct of trade or business. (¶ 58). Plaintiff also claims that Defendant has acted intentionally and maliciously, in violation of public policy, and that as a result, Plaintiff has been injured. (¶¶ 59-60). Plaintiff prays for declaratory and injunctive relief, damages, interest, costs and attorneys' fees. (¶ 63).

Plaintiff has filed a return of service showing that Defendant was served by serving its President in Orlando, Florida on November 18, 2011. (Doc. 10). Defendant has not answered or otherwise defended this action and on June 29, 2012, the Clerk entered a default against Defendant. (Doc. 22).

On June 5, 2012, Plaintiff filed its Unopposed Motion for Entry of Stipulated Final Judgment and Permanent Injunction. (Doc. 17). Attached to the motion is a Settlement Agreement which purports to amicably settle this case. (Doc. 17-1). In the Settlement

Agreement, the parties agree to the entry of a stipulated final judgment and permanent injunction and to the dismissal of this case with the Court retaining jurisdiction to enforce the final judgment and Settlement Agreement.  (Id.)  On June 27, 2012, the Court conducted a hearing on the motion and denied it.  (Doc. 20).  In its Order, the Court said that it was "not inclined to grant a stipulated final judgment and permanent injunction in this case without having Defendant appear before the Court and agree to such an injunction on the record." (Id.).  In the same Order, the Court gave Plaintiff until August 15, 2012, to renew its motion as a joint motion or file a motion for entry of a default.  (Id.)

Now, Plaintiff requests a final default judgment on Counts II, III, IV and V of its Complaint, permanently enjoining Defendant, its agents and employees, and all other persons who act in concert or participate with Defendant from marketing, promoting, selling, or delivering any reproduction, counterfeit, copy, colorable imitation, confusingly similar, or substantially similar version of Plaintiff's hot air balloon themed Ferris wheel ride, its Jump Around ride, or other substantially similar ride which has a race car theme, in the United States.  (Doc. 25 at 6).

## II.  Jurisdiction

Service of Plaintiff's Summons and Complaint on Defendant's President satisfied the requirement for service of process on a corporation under Florida law.  FLA. STAT. § 48.081(1)(a).  This service also satisfies FED. R. CIV. P. 4(h).

This Court has original jurisdiction over Plaintiff's Lanham Act claim because it is alleged that it affects interstate commerce.  28 U.S.C. §1331.  The Court has ancillary jurisdiction over the remaining claims.  28 U.S.C. § 1332(a)(1).

### III.  Default

Federal Rule of Civil Procedure 55(a) provides that a default may be entered "[w]hen a party against whom judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise."  The Clerk is required to enter a defendant's default "[w]hen service of process is properly effected, but the served party fails to respond in a timely manner . . . ." Kelly v. Florida, 233 F. App'x 883, 885 (11th Cir. 2007) (citing FED. R. CIV. P. 55(a)).  Default was properly entered against the Defendant because, to date, Defendant has not appeared or defended this action.  When a defendant defaults, it admits the well-pleaded factual allegations in the complaint as true. Eagle Hospital Physicians, LLC v. SRG Consulting, Inc., 561 F.3d 1298, 1307 (11th Cir. 2009). "A default judgment is unassailable on the merits . . . so far as it is supported by well-pleaded allegations." Id. (internal citation omitted).

### IV.  Default Final Judgment

Federal Rule of Civil Procedure 55(b)(2) provides for the entry of default judgment by the court upon a party's motion. FED. R. CIV. P. 55(b)(2). The Court can enter a default judgment after it conducts an accounting, determines the amount of damages, establishes the truth of any allegation by evidence, or investigates any other matter. Id.

The entry of a default by the Clerk does not mandate the entry of a default judgment by the Court. DIRECTV, Inc. v. Trawick, 359 F. Supp. 2d 1204, 1206 (M.D. Ala. 2005).  "The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.  In short . . .  a default is not treated as an absolute confession of the

defendant of his liability and of the plaintiff's right to recover." Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).[1]  Along with the requirement that the Clerk's entry of default be proper, the Court may enter a default judgment only if the Complaint sufficiently alleges a basis for default judgment. Id. ("There must be a sufficient basis in the pleadings for the judgment entered."); Enpat, Inc. v. Budnic, 773 F. Supp. 2d 1311, 1313 (M.D. Fla. 2011) (citing Nishimatsu, 515 F.2d at 1206); see also Eagle Hosp., 561 F.3d 1307-08 (assessing the sufficiency of a complaint to determine if a district court's entry of default judgment was proper).

## V.  Lanham Act

"[T]he Lanham Act exists to protect consumers from confusion and to protect the investment of trademark owners in their brands." Pepsico, Inc. v. Distribuida La Matagalpa, Inc., 510 F. Supp. 2d 1110, 1114 (S.D. Fla. 2007).  The Act also protects trademark owners who invest time, money and energy to build a product's reputation and offer it to consumers. Id. at 1115.  The Act applies to trademarks, service marks and trade dress. University of Florida v. KPB, Inc., 89 F.3d 773, 775-76 (11th Cir. 1996). "Trade dress" refers to the "total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." Id. at 776 n. 4 (quoting AmBrit, Inc. v. Kraft, Inc., 812 F.2d 1531, 1535 (11th Cir. 1986)).

The elements of an unfair competition claim under the Lanham Act are: (1) the

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

plaintiff had prior rights to the mark (or in this case, trade dress) at issue; and (2) the defendant employed a mark that was the same, or confusingly similar, to plaintiff's mark, so that consumers were likely to be confused. Petmed Express, Inc. v. Medpets.com, Inc., 336 F. Supp. 2d 1213, 1218 (S.D. Fla. 2004). "[T]he touchstone test for a violation of § 43(a) is the 'likelihood of confusion' resulting from the defendant's adoption of a trade dress similar to the plaintiff's." University of Florida, 89 F.3d at 777 n. 7 (quoting Original Appalachian Artworks, Inc. v. Toy Loft, Inc., 684 F.2d 821, 831-32 (11th Cir. 1982)). The factors which the Court should consider in determining whether there is a likelihood of confusion are "the type of trademark, the similarity of design, the similarity of the product, the identity of retail outlets and purchasers, the similarity of advertising media used, defendants' intent, and actual confusion." NEXxUS Prod. Co. v. Gentle Concepts, Inc., No. 87-1152-CIV-T-15, 1993 WL 496824 *4 (M.D. Fla. April 30, 1993) (quoting John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 972 (11th Cir. 1983)).

Here, Plaintiff has alleged that it is the sole owner in and to a Ferris wheel type amusement ride with a hot air balloon theme and also, the race car themed Jump Around. The Stipulation evidences Plaintiff's superior rights in hot air balloon themed Ferris wheels. Exhibits "B," "C," and "D" to the Complaint depict the similarity of Plaintiff's and Defendant's designs and the similarity of their products. The similarity of Plaintiff's and Defendant's customers is shown by the fact that they both attended the Convention to market their products and Exhibits "C" and "D" demonstrate the similarity of their advertising. These facts, together with Plaintiff's allegations that Defendant has actually copied its products and is willfully marketing a counterfeit version of the Jump Around are

-8-

sufficient to establish Defendant's intent and actual confusion in the marketplace. Therefore, I recommend that Plaintiff recover a judgment on Count II for violation of the Lanham Act.

## VI.  Common Law Unfair Competition

The elements of a claim for unfair competition under the common law of Florida are that:

> (1) the plaintiff is the prior owner of a trade name or service mark; (2) the trade name or service mark is arbitrary, suggestive, or has acquired a secondary meaning; (3) the defendant is using a confusingly similar trade name or service mark to indicate or identify similar goods and services which it is marketing in competition with plaintiff in the same locale where plaintiff has already established its trade name or service mark; and (4) as a result of the defendant's actions, consumer confusion as to the source or sponsorship of defendant's goods is likely.

Petmed Express, 336 F. Supp. 2d at 1219.  Applying these factors to Plaintiff's trade dress claim, and for the reasons previously discussed, I find that in Count III of its Complaint, Plaintiff has sufficiently alleged a claim against Defendant for unfair competition.  Accordingly, I recommend that Plaintiff receive a judgment against Defendant on Count III of its Complaint.

## VII.  Common Law Trademark Infringement

In Anderson v. Upper Keys Bus. Grp., Inc., the Court explained that to prove a claim for tradename or trademark infringement, a plaintiff must show that:

> (1) [He] first adopted and used a certain name (or mark ...) in a certain market or trade area, as a means of establishing good will and reputation and to describe, identify or denominate particular services rendered or offered by [him] ... and to distinguish them from similar services rendered or offered ... by

others, and

(2) through [his] association with such services or goods [his] tradename (or mark, etc.) has acquired a special significance as the name of the services rendered ... by [him] in [his] trade area because [his] tradename (or mark, etc.)

    (a) is inherently distinctive (fanciful, novel or arbitrary), or

    (b) while ... descriptive, or geographic, [his] tradename (or mark, etc.) has, by actual usage, acquired in a certain trade area, a secondary, special or trade meaning as indicating, describing, identifying or denominating [him] as the source of certain services ... and

(3) [defendant] has commenced, or intends to commence, the use of an identical or confusingly similar tradename (or mark, etc.) to indicate or identify similar services rendered ... by it in competition with [him] in the same trade area in which [he] has already established [his] tradename (or mark, etc.) and

(4) as a consequence of [defendant's] action, or threatened action, customer confusion of source or as to the sponsorship of the services ... offered, or to be offered, by [defendant] is probable (likely) or inevitable.

61 So. 3d 1162, 1167-68 (Fla. 3rd D.C.A. 2011) (quoting Am. Bank of Merritt Island v. First Am. Bank & Trust, 455 So. 2d 443, 445-46 (Fla. 5th DCA 1984) (footnotes and citations omitted)). For the reasons already discussed, Count IV of Plaintiff's Complaint sufficiently alleges all four elements with respect to Plaintiff's trade dress. Therefore, I recommend the Court enter judgment for Plaintiff on Count IV of its Complaint.

## VIII.  FDUTPA

The elements of a FDUTPA claim brought pursuant to FLA. STAT. § 501.201 are:

(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. <u>Virgilio v. Ryland Group, Inc.</u>, 680 F.3d 1329, 1338 n.25 (11th Cir. 2012).  Florida law recognizes that trademark infringement and unfair competition are unfair and deceptive trade practices which violate FDUPTA.  <u>Pepsico</u>, 510 F. Supp. 2d at 1114.  I recommend the Court enter judgment for Plaintiff and against Defendant on Count V of Plaintiff's Complaint.

## IX.  Injunctive Relief

Courts have found that injunctive relief is appropriate in infringement cases because there is not an adequate remedy at law to redress the infringement and infringement by its nature causes irreparable harm.  <u>Coach, Inc. v. Just A Boun, LLC</u>, No. 6:11-cv-797-Orl-18GJK, 2011 WL 6318966 *4 (M.D. Fla. Nov. 8, 2011).  Injunctive relief is also available to remedy FDUTPA violations.  See FLA. STAT. § 501.211(1); <u>Wyndham Vacation Resorts, Inc. v. Timeshares Direct, Inc.</u>, No. 5D11-1517, 2012 WL 3870405 *2-3 (Fla. 5th D.C.A. Sept. 7, 2012).  The four prerequisites Plaintiff must prove for an injunction are:

> (1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

<u>eBay Inc.v. MercExchange, L.L.C.</u>, 547 U.S. 388, 391 (2006).

The allegations in Plaintiff's Complaint, admitted by Defendant, establish that the trade dress of Plaintiff's products, used in interstate commerce is proprietary.  Defendant

-11-

markets competing products in the same locale as Plaintiff, which are confusingly similar to Plaintiff's products.  And, the result is a strong likelihood of consumer confusion.   It is undeniable that Defendant's infringement and unfair competition are inequitable and that legal remedies are insufficient to compensate Plaintiff.  Defendant's breach of the Stipulation demonstrates the inadequacy of legal remedies.  The hardship to Plaintiff which results from Defendant's infringement far outweighs any possible hardship that an injunction against unfair competition and infringement would have on the Defendant.  And, "courts have generally recognized that in [infringement] cases, the public interest is 'paramount.'" Coach, Inc., 2011 WL 6318966 at *4 (quoting BellSouth Adver. & Publ'g Corp.v. Real Color Pages, Inc., 792 F.Supp. 775, 785 (M.D. Fla. 1991)).  Therefore, the undersigned recommends Plaintiffs' request for a permanent injunction be granted.  This is the sole relief requested by Plaintiff, it does not seek damages, costs, attorneys' fees or any other remedies in its motion.  (Doc. 25).

## X.  Recommendation

For the foregoing reasons, it is respectfully RECOMMENDED that the Court:

1.  GRANT Plaintiff's Motion for Final Default Judgment and Injunction against Defendant, S.B.F. and Memorandum of Law in Support (Doc. 25);

2.  ENTER final default judgment for Plaintiff Zamperla, Inc. and against Defendant, S.B.F., d/b/a SBF/VISA GROUP on Counts II, III, IV and V of Plaintiff's Complaint;

3.  ISSUE a PERMANENT INJUNCTION in favor of Plaintiff Zamperla, Inc. and

against S.B.F., d/b/a SBF/VISA GROUP together with its agents and employees, and all other persons acting in concert or participation with each or any one of them, from marketing, promoting, selling or delivering any reproduction, counterfeit, copy, colorable imitation, confusingly similar, or substantially similar version of Plaintiff Zamperla, Inc.'s hot air balloon themed Ferris wheel ride in the United States;

    4.  ISSUE a PERMANENT INJUNCTION in favor of Plaintiff Zamperla, Inc. and against S.B.F., d/b/a SBF/VISA GROUP together with its agents and employees, and all other persons acting in concert or participation with each or any one of them, from marketing, promoting, selling or delivering any reproduction, counterfeit, copy, colorable imitation, confusingly similar, or substantially similar version of Plaintiff Zamperla, Inc.'s Jump Around ride, including any Pop-Ups ride or other substantially similar ride which has a race car theme in the United States;

    5.  RESERVE jurisdiction to enforce the Injunction; and

    6.  Direct the Clerk to CLOSE the file.

IN CHAMBERS in Orlando, Florida, on October 5, 2012.

*[Signature]*
THOMAS B. SMITH
United States Magistrate Judge

Copies to:

    Presiding United States District Judge
    Counsel of Record